IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES L. GLOVER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO.   2:23-cv-03686-TJS |
| | : | |
| LT BARRY JACOBS ET AL., | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendants. | : | |

### **DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Plaintiff is a dedicated community activist and a staunch advocate for Second Amendment rights. (Exhibit A, Plaintiff's Complaint, "Background," at 2 of 9[1].)

2. Plaintiff actively engages in activities such as filming police stops and encounters, seeking public records under Pennsylvania's Right to Know Law ("RTKL"), and requesting audio and video body camera footage of police interactions pursuant to Act 22. (Id.)

3. Plaintiff uses the records he obtains pursuant to his RTKL and Act 22 requests to gain insights into law enforcement operations and practices, ultimately aiming to reduce instances of police misconduct and other potential violations revealed through the requested records. (Id., first full paragraph, at 3 of 9.)

---

[1] Referring to the Court's ECF page numbers appearing at the top of each page of the exhibit.

1

4. On December 28, 2021, Plaintiff was arrested by Detective Frank Wallace of the Philadelphia Police Department, upon a Criminal Complaint filed by Latanya Jackson, a Scotlandyard Security guard assigned to the Public Services Building located at 400 North Broad Street, in Philadelphia, PA. (Exhibit B, MC Transcript, "Arrest Date:" and "BY:" at 1 of 2; Exhibit C, Affidavit of Probable Cause, first full paragraph, at 2 of 2.)

5. Ms. Jackson accused Plaintiff of standing outside the building on Sunday, December 26, 2021, at 8:53 PM, tapping on the glass window, and pointing a long rifle at her face while she was at the security desk in the lobby. (Exhibit C, first and second full paragraphs, at 2 of 2.)

6. Ms. Jackson told Detective Wallace that she immediately recognized Plaintiff because there were photos of him posted at all the security desks, and she signed one of the photos of him when she was interviewed by Detective Frederick Girardo. (Exhibit D, Investigation Interview Record ("IIR") by Detective Frank Wallace, Interview of Latanya Jackson, dated 12/27/21; Exhibit E, IIR by Detective Frederick Girardo, Interview of Latanya Jackson, dated 12/26/21, at Question 4, p. 1, Question 6, p. 2, and photo signed by Ms. Jackson attached to the IIR.)

7. Plaintiff claims he endured an unjust incarceration period lasting thirty-six (36) days before regaining his freedom, and that it took nearly two years for the

criminal charges against him to be nolle prossed. (Exhibit A, fifth full paragraph, at 3 of 9.)

8. He further claims that during the period when the charges were pending, he refrained from submitting records requests, because of the chilling effect these actions had had on his rights. (Id., sixth full paragraph, at 3 of 9.)

9. He claims he did not post to his YouTube channel during those two years due to the arrest and charges. (Id., continuation of paragraph at top of page, at 4 of 9.)

10. Plaintiff claims that the photo of him posted in the building located at 400 North Broad Street was posted at the direction of Defendants LT Barry Jacobs, Officer Douglas Morrison, Jr., Russell Crotts, Shea Skinner, and Feige M. Grundman, which resulted in his arrest and 36-day imprisonment. (Id., "Claims," last paragraph at 4 of 9, continuation at top of page at 5 of 9.)

### The Individual Defendants

*Feige Grundman, Esquire*

11. Feige Grundman was Divisional Deputy City Solicitor for the Right to Know Division of the City of Philadelphia Law Department from June 2019 until April 2023. (Exhibit F, Declaration of Feige Grundman, Esquire, at ¶ 2.)

12. She was promoted to Chief Deputy City Solicitor of the Right to Know ("RTK") Unit and served in that capacity from May 2023 until June 2024. (Id. at ¶ 3.)

13. Feige Grundman also served as the Open Records Officer for the Law Department. (Id. at ¶ 4.)

14. The RTK Unit provides legal representation and advice to more than 25 departments, offices, boards, and commissions of the City of Philadelphia, including the Philadelphia Police Department ("PPD"). (Id. at ¶ 5.)

15. In processing RTK and Act 22 requests directed to the PPD, the RTK Unit routinely provides support and advice to the police officers processing those requests. (Id. at ¶ 6.)

16. Attorneys in the RTK Unit represent the PPD in appeals to the Pennsylvania Office of Open Records when a requester appeals a PPD response to a RTK request. (Id. at ¶ 7.)

17. Attorneys in the RTK Unit represent the PPD in the Court of Common Pleas when a requester appeals a PPD response to an Act 22 request. (Id. at ¶ 8.)

18. Attorneys in the RTK Unit also represent the PPD in the Court of Common Pleas when a RTK requester appeals the decision of the Pennsylvania Office of Open Records. (Id. at ¶ 9.)

19. If an appeal goes to an intermediate appellate court, the Appeals Unit of the City of Philadelphia Law Department represents the PPD. (Id. at ¶ 10.)

20. The same applies to appeals to the Pennsylvania Supreme Court. (Id. at ¶ 11.)

21. All RTK requests are processed in accordance with the RTK Law at 65 Pa. Stat. § 67.101, et seq. (Id. at ¶ 12.)

22. All Act 22 requests are processed in accordance with 42 Pa. Cons. Stat. § 67A01, et seq. (Id. at ¶ 13.)

23. Feige Grundman routinely oversaw and reviewed Mr. Glover's RTK and Act 22 requests. (Id. at ¶ 14.)

24. She had no personal involvement in the arrest and charging of Mr. Glover, as alleged by him in his Complaint. (Id. at ¶ 15.)

25. She had no personal involvement in the posting of photographs of Mr. Glover inside the building located at 400 North Broad Street. (Id. at ¶ 16.)

### *LT Barry Jacobs*

26. LT Barry Jacobs is a Police Lieutenant with the PPD and his current assignment is with the PPD's Research and Planning Unit. (Exhibit G, Declaration of LT Barry Jacobs, at ¶¶ 1-2.)

27. He has been assigned to the PPD's Research and Planning Unit since 2016. (Id. at ¶ 3.)

28. LT Jacobs oversees Right Know and Act 22 requests that are submitted to the PPD. (Id. at ¶ 4.)

29. The process of responding to such requests is done in accordance with the Right Know Law. (Id. at ¶ 5.)

30. Right to Know and Act 22 requests are handled by a sergeant and two police officers, including Officer Douglas Morrison, Jr. (Id. at ¶ 6.)

31. Decisions on whether requests are granted pass through LT Jacobs, and he signs off on the letter to the requester stating what they will receive or not receive from the PPD, with an explanation of the decision. (Id. at ¶ 7.)

32. Routinely, LT Jacobs and the officers who handle RTK requests consult with the attorneys in the Right to Know Unit of the City of Philadelphia Law Department. (Id. at ¶ 8.)

33. The Right to Know process, by law, provides for an appeals process that begins with the Court of Common Pleas all the way up to the Pennsylvania Supreme Court. (Id. at ¶ 9.)

34. When a requester appeals a decision by the PPD, LT Jacobs signs off on the affidavit that is presented to the Court of Common Pleas by City of Philadelphia solicitors. (Id. at ¶ 10.)

35. The types of requests the PPD typically receive are from the media, law firms, and persons who are incarcerated. (Id. at ¶ 11.)

36. Mr. Glover's requests have been treated as media requests based on representations made by him when stating the purposes for his requests. (Id. at ¶ 12.)

37. Mr. Glover has been treated no differently than any other media requester. (Id. at ¶ 13.)

38. LT Jacobs had no personal involvement in the arrest and charging of Mr. Glover, as alleged by him in his Complaint. (Id. at ¶ 14.)

39. LT Jacobs had no personal involvement in the posting of photographs of Mr. Glover inside the building located at 400 North Broad Street. (Id. at ¶ 15.)

### *Russell Crotts*

40. Russell Crotts was a deputy city solicitor with the City of Philadelphia Law Department from October of 2015 to October of 2024. (Exhibit H, Declaration of Russell Crotts, Esquire, at ¶ 2.)

41. Russell Crotts was assigned to the Law Department's Right to Know ("RTK") Unit from October 2015 to August 2022. (Id. at ¶ 3.)

42. Russell Crotts routinely provided legal advice to the PPD regarding Mr. Glover's RTK and Act 22 requests. (Id. at ¶ 13.)

43. Russell Crotts also represented the PPD at Pennsylvania's Office of Open Records and the Court of Common Pleas regarding appeals by Mr. Glover. (Id. at ¶ 14.)

44. Russell Crotts had no personal involvement in the arrest and charging of Mr. Glover, as alleged by him in his Complaint. (Id. at ¶ 15.)

7

45. Russell Crotts had no personal involvement in the posting of photographs of Mr. Glover inside the building located at 400 Broad Street. (Id. at ¶ 16.)

### *Police Officer Douglas Morrison, Jr.*

46. Police Officer ("PO") Morrison is a police officer for the PPD assigned to the PPD's Research and Planning Right to Know ("RTK") Section. (Exhibit I, Declaration of Police Officer Douglas Morrison, Jr., at ¶¶ 1-2.)

47. He has been assigned to the PPD's RTK Section since 2013. (Id. at ¶ 3.)

48. He and one other police officer process RTK and Act 22 requests. (Id. at ¶ 4.)

49. All RTK and Act 22 requests are processed in accordance with the RTK Law. (Id. at ¶ 6.)

50. The RTK Law provides that requests should be processed within thirty days. (Id. at ¶ 7.)

51. If more time is needed to process a request, either PPD or the City's Law Department will make the request. (Id. at ¶ 8.)

52. A request for extension of the thirty-day deadline is permitted under the RTK Law. (Id. at ¶ 9.)

53. PO Morrison has processed several RTK and Act 22 requests from Mr. Glover and his corporate entity, Shakur Capital, LLC. (Id. at ¶ 10.)

54. His requests have been processed as media requests and he has not been treated any differently than other media requesters. (Id. at ¶ 11.)

55. PO Morrison had no personal involvement in the arrest and charging of Mr. Glover, as alleged by him in his Complaint. (Id. at ¶ 12.)

56. PO Morrison had no personal involvement in the posting of photographs of Mr. Glover inside the building located at 400 North Broad Street. (Id. at ¶ 13.)

### *Deputy City Solicitor Shea Skinner*

57. Shea Skinner is a deputy city solicitor ("DCS") assigned to the Compliance and Legislation Group, in the Right to Know Law ("RTK") Unit. (Exhibit J, Declaration of Deputy City Solicitor Shea Skinner, at ¶ 1.)

58. He has been assigned to RTK since 2022. (Id. at ¶ 2.)

59. DCS Skinner has routinely provided legal advice to the PPD regarding Mr. Glover's RTK and Act 22 requests. (Id. at ¶ 12.)

60. He has also represented the PPD at Pennsylvania's Office of Open Records and the Court of Common Pleas regarding appeals by Mr. Glover. (Id. at ¶ 13.)

61. DCS Skinner had no personal involvement in the arrest and charging of Mr. Glover, as alleged by him in his Complaint. (Id. at ¶ 14.)

62. DCS Skinner had no personal involvement in the posting of photographs of Mr. Glover inside the building located at 400 Broad Street. (Id. at ¶ 15.)

Respectfully submitted:

Date:  October 24, 2024

*Matthew K. Hubbard*
Matthew Kevin Hubbard
Senior Attorney
City of Philadelphia Law Department
Attorney for Defendants

10