

### FINAL DETERMINATION

| | |
|---|---|
| IN THE MATTER OF | : |
| | : |
| JAMES GLOVER AND SHAKUR | : |
| CAPITAL, LLC, | : |
| Requester | : |
| | : |
| v. | : Docket No: AP 2024-0745 |
| | : |
| CITY OF PHILADELPHIA CITIZENS | : |
| POLICE OVERSIGHT COMMISSION, | : |
| Respondent | : |

### FACTUAL BACKGROUND

On February 9 and 14, 2024, James Glover and Shakur Capital, LLC (collectively "Requester") filed two requests (individually "Request;" collectively "Requests") with the City of Philadelphia ("City") Citizens Police Oversight Commission[1] ("CPOC") pursuant to the Right-to-Know Law ("RTKL"), 65 P.S. §§ 67.101 *et seq*. The first Request sought, in pertinent part:[2]

> [2] Requesting picture ID photo of all CPOC employees [and] their work schedules…
>
> [7] Provide records of what CPOC employee name and title sent the email response attracted [sic] to [the Requester]

---

[1] The "Agency Name" listed on the Requests was Feige Grundman, Esq., the Open Records Officer for the City's Law Department, and Catherine Twigg, Esq., General Counsel for the CPOC. The Requester filed a single appeal, which the OOR docketed as *Shakur v. City of Philadelphia Law Department*. Subsequently, the OOR complied with the Requester's request to re-docket the appeal as against the CPOC.

[2] This Request included other Items that the Requester did not mention in his appeal. Because he has not challenged the CPOC's response to these Items, the Requester has waived any objections thereto, and those Items are not referenced in this Final Determination. *See Pa. Dep't of Corr. v. Off. of Open Records*, 18 A.3d 429 (Pa. Commw. Ct. 2011).

1

[8] Provide records of who 'name and title' was monitoring the CPOC email on Nov 20, 2023, 11:02 AM.

The second Request sought:

Requesting memo CPOC or any other [C]ity agency located at 1515 [A]rch [S]t [P]hila, [PA,] provided to Scotland [Y]ard security telling them [the Requester] isn't allowed upstairs in the building at 1515 [A]rch [S]t that the CPOC and [the City] law department are located in. Additionally provide the image of [the Requester] that was also with the memo and or email. Please include memo records and email records; also provide the name of the person responsible for creating the memo / email and who approved it.

On March 14, 2024, after timely invoking thirty-day extensions to respond to each of the Requests, *see* 65 P.S. § 67.902(b), the CPOC denied the Requests,[3] arguing that records responsive to Item 2 of the first Request constitute notes and working papers, 65 P.S. § 67.708(b)(12), are protected by the constitutional right to privacy, and that their disclosure would be reasonably likely to threaten personal safety, 65 P.S. § 67.708(b)(1)(ii). With regard to Items 7 and 8, the CPOC argued that no responsive records exist. Finally, the CPOC argued that disclosure of records responsive to the second Request would be reasonably likely to threaten personal security, public safety and building security, 65 P.S. §§ 67.708(b)(1)(ii)-(3).

On March 18, 2024, the Requester filed an appeal with the Office of Open Records ("OOR"), challenging the denial and stating grounds for disclosure. The OOR invited both parties to supplement the record and directed the CPOC to notify any third parties of their ability to participate in this appeal. *See* 65 P.S. § 67.1101(c).

On March 28, 2024, the CPOC submitted a position statement reiterating its grounds for denial and also arguing that disclosure of records responsive to Item 2 of the first Request would be reasonably likely to threaten computer security, 65 P.S. § 67.708(b)(4). In support, the CPOC submitted a statement made under the penalties of unsworn falsification to authorities by Attorney

---

[3] In pertinent part; the Items that were granted are not at issue in this appeal.

2

Twigg ("Twigg Attestation").[4]  The next day, the Requester requested additional time to make a submission, and on April 1, 2024, the OOR extended the record, noting that both parties could make submissions by April 3, 2024.  On that date, the Requester made a lengthy submission containing various records including an OOR Final Determination, records related to court cases, and photographs of CPOC employees.  Notably, the submission included a statement made under the penalties of unsworn falsification to authorities by Lt. Barry Jacobs of the City Police Department ("Jacobs Attestation") that had been submitted in a previous OOR appeal.[5]

On April 5, 2024, the Requester noted that one of his 19 submissions was not listed on the docket.[6]  The Requester subsequently sent another version of the file and the OOR uploaded it to the portal; because the original version was timely submitted but was not accessible until after the record closing date, the OOR permitted the CPOC additional time to respond and requested a brief extension of the Final Determination due date.  *See* 65 P.S. § 67.1102(b)(3) ("In the absence of a regulation, policy or procedure governing appeals under this chapter, the appeals officer shall rule on procedural matters on the basis of justice, fairness and the expeditious resolution of the dispute.").

On the same date, the Requester agreed to the extension of the Final Determination due date but objected to the extension of time for the CPOC to respond.  *See* 65 P.S. § 67.1101(b)(1) ("Unless the requester agrees otherwise, the appeals officer shall make a final determination …

---

[4] The CPOC also argues that the appeal is moot as to Items 7 and 8 of the first Request, because the Requester has been provided the names and titles of all CPOC employees; however, the Request clearly seeks the identity(ies) of the particular employee(s) who sent the email and was monitoring the account. As addressed below, the CPOC does not have that information.

[5] The Requester emailed his submissions to the OOR as 19 individual .pdf files, noting that the OOR's portal only permits ten documents to be submitted.  As a courtesy, the OOR uploaded the Requester's submissions.  He subsequently asked the OOR on two occasions to re-upload the records in the order of the identified exhibits.  The OOR declined to do so.  *See* 65 P.S. § 67.1102(b)(3).

[6] This was because the OOR combined 18 of the Requester's submissions into a single .pdf document.  The conversion process did not automatically notify the OOR that one of the submissions was damaged and could not be opened.  The OOR also inadvertently omitted another document that was emailed by the Requester; this was subsequently uploaded.

3

within 30 days of receipt of the appeal…."). However, because it bears the burden of proof, the OOR extended the record for the CPOC to respond. *See* 65 P.S. § 67.1102(b)(3). On April 8, 2024, the CPOC submitted a position statement and the OOR responded to the parties' complaints, clarifying that no further evidence would be accepted from the Requester.

Nevertheless, on the same day, the Requester submitted additional correspondence and requested the opportunity to submit additional evidence. Because the Requester had already been informed that the record was closed and because the correspondence was both duplicative and not probative, the OOR declines to accept it into the record. *See* 65 P.S. § 67.1102(a)(2) ("The appeals officer may admit into evidence … documents … believe[d] to be reasonably probative and relevant to an issue in dispute [and] may limit the nature and extent of evidence found to be cumulative."); *UnitedHealthcare of Pa., Inc. v. Baron*, 171 A.3d 943, 952 (Pa. Commw. Ct. 2017) ("[r]equester is not entitled to rebuttal for the sake of having the last word"); *Jensen v. Pa. Dep't of Corr.*, No. 317 C.D. 2023, 2024 Pa. Commw. Unpub. LEXIS 108, *8 (finding that a requester did not have a due process right to respond to the agency's position statement).

On April 9, 2024, the CPOC submitted a position statement, reiterating its arguments and among other things, urging the OOR to disregard the Requester's many submissions, many of which the CPOC argues are unsupported, misleading or outright false. On various dates, the Requester asked other questions, and on April 19, 2024, the CPOC submitted a supplemental attestation made by Attorney Twigg ("Supplemental Twigg Attestation"). Shortly after the CPOC's submission, the Requester again asked to make another submission; this request is denied. *See* 65 P.S. § 67.1102(a)(2); *UnitedHealthcare*, 171 A.3d at 952; *Jensen*, 2024 Pa. Commw. Unpub. LEXIS 108, *8. On April 19, 2024, the Requester made an additional submission; for the reasons previously enumerated, this submission was not accepted into the record.

4

## LEGAL ANALYSIS

The CPOC is a local agency subject to the RTKL. 65 P.S. § 67.302. Records in the possession of a local agency are presumed to be public, unless exempt under the RTKL or other law or protected by a privilege, judicial order or decree. *See* 65 P.S. § 67.305. As an agency subject to the RTKL, the CPOC is required to demonstrate, "by a preponderance of the evidence," that records are exempt from public access. 65 P.S. § 67.708(a)(1). Preponderance of the evidence has been defined as "such proof as leads the fact-finder … to find that the existence of a contested fact is more probable than its nonexistence." *Pa. State Troopers Ass'n v. Scolforo*, 18 A.3d 435, 439 (Pa. Commw. Ct. 2011) (quoting *Pa. Dep't of Transp. v. Agric. Lands Condemnation Approval Bd.*, 5 A.3d 821, 827 (Pa. Commw. Ct. 2010)). The Requester has asked the OOR to conduct *in camera* review and the CPOC has stated that it is willing to cooperate; however, the OOR declines to do so, as it has the necessary information and evidence before it to properly adjudicate the matter.

1. **No records responsive to Items 7 and 8 of the first Request or the entirety of the second Request exist**

The CPOC argues that no records responsive to Items 7 and 8 of the first Request or the entirety of the second Request exist. The Twigg Attestation affirms that a search for records responsive to Items 7 and 8 of the first Request confirmed that none exist. Twigg Attestation at ¶ 5. The Twigg Attestation explains:

6. … CPOC's general office and intake email account, cpoc@phila.gov, is accessed and maintained by various CPOC staff. This email address is used for, among other things, receiving, processing, and responding to complaints of alleged police misconduct. []

7. Communications sent by this email account typically pertain to complaints of alleged misconduct and general questions for the [CPOC]. Emails from this account are often sent on behalf of the [CPOC] and do not include a particular staff member's name.

5

    8. CPOC does not maintain records identifying specific CPOC staff by name and title in reference to particular emails sent or received by the cpoc@phila.gov account, or records identifying "name and title" of who was "monitoring the CPOC email". There is no set schedule for staff monitoring th[is] email address.

"The burden of proving a record does not exist ... is placed on the agency responding to the right-to-know request." *Hodges v. Pa. Dep't of Health*, 29 A.3d 1190, 1192 (Pa. Commw. Ct. 2011). An attestation by the individual who searched for responsive records is sufficient to meet an agency's burden of proving the nonexistence of a record. *Id.*; *see also Pa. Dep't of Health v. Mahon*, 283 A.3d 929, 936 (holding that, when there is evidence that a record does not exist, "[i]t is questionable to what degree additional detail and explanation are necessary…."); *Campbell v. Pa. Interscholastic Athletic Ass'n*, 268 A.3d 502 (Pa. Commw. Ct. 2021) (noting that an agency need only prove the nonexistence of records by a preponderance of the evidence, the lowest evidentiary standard, and is tantamount to a "more likely than not" inquiry). In the absence of any evidence that the CPOC has acted in bad faith,[7] "the averments in the [attestation] should be accepted as true." *McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 382-83 (Pa. Commw. Ct. 2014) (citing *Off. of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Commw. Ct. 2013)).

In response to the OOR's request, the Supplemental Twigg Attestation clarifies:

    2. I searched CPOC's records for any [responsive] records.

    3. As a result of that search, one email chain was identified as potentially responsive to [the second Request].
…

---

[7] The Requester asks the OOR to make a finding of bad faith. Section 1304(a) of the RTKL states that a court "may award reasonable attorney fees and costs of litigation … if the court finds … the agency receiving the … request willfully or with wanton disregard deprived the requester of access to a public record … or otherwise acted in bad faith…" 65 P.S. § 67.1304(a). Similarly, Section 1305(a) authorizes a court to "impose a civil penalty of not more than $1,500 if an agency denied access to a public record in bad faith." 65 P.S. § 67.1305; *see also Off. of the Dist. Atty. of Phila. v. Bagwell*, 155 A.3d 1119, 1140-41 (Pa. Commw. Ct. 2017) ("An example of bad faith is a local agency's failure to comply with the mandate of Section 901 of the RTKL, which requires that a local agency make a good faith search for information responsive to a request and determination of whether that information is public."). However, the record does not support a finding of bad faith

5. Specifically, the email describes an incident in which an individual arrived at One Parkway Building ("OPB") located at 1515 Arch Street, Philadelphia, PA., and purportedly represented to building security personnel that the individual was a mail carrier and had a delivery for CPOC.

…

11. However, upon review of this record, it appears that, although the record is related to the general subject matter of the [R]equest, it is facially not responsive to the stated parameters of the [R]equest.

12. The record does not constitute a "memo" or other record sent between the individuals or agencies specified in the [R]equest, and does not say, effectuate, or constitute what the [R]equest appears to contemplate as responsive.

13. In other words, there is no [] record [responsive to the second Request] ….

An agency may interpret the meaning of a request for records, but that interpretation must be reasonable. *See Bradley v. Lehighton Area Sch. Dist.*, OOR Dkt. AP 2021-0333, 2021 PA O.O.R.D. LEXIS 715; *Ramaswamy v. Lower Merion Sch. Dist.*, OOR Dkt. AP 2019-1089, 2020 PA O.O.R.D. LEXIS 2095. The OOR determines whether the agency's interpretation is reasonable from the text and context of the request alone, as neither the OOR nor a requester is permitted to alter a request on appeal. *See McKelvey v. Off. of the Att'y Gen.*, 172 A.3d 122, 127 (Pa. Commw. Ct. 2016); *Smith Butz, LLC v. Pa. Dep't of Env't Prot.*, 142 A.3d 941, 945 (Pa. Commw. Ct. 2016). Here, because the second Request facially seeks a memorandum or email provided to Scotland Yard, the CPOC's interpretation that the email is not responsive was reasonable.[8]

The Twigg Attestation establishes that there are not employee names associated with emails sent from the CPOC's general office and intake email account, nor is there a set schedule regarding which employee may be monitoring the account. The Supplemental Twigg Attestation affirms that there are no records responsive to the second Request. Accordingly, the CPOC has

---

[8] The Supplemental Twigg Attestation sets forth why disclosure of the email would be reasonably likely to threaten safety and security; however, because it is facially not responsive to the second Request, the OOR need not assess the likelihood that its disclosure would threaten safety and security.

7

met its burden of proving that no records responsive to Items 7 and 8 of the first Request or the entirety of the second Request exist. *See Hodges*, 29 A.3d at 1192.

### 2. Disclosure of information responsive to Item 2 of the first Request would be reasonably likely to threaten personal safety and building security

CPOC argues that disclosure of employee information would be reasonably likely to threaten personal safety and building security. Section 708(b)(1)(ii) of the RTKL exempts from disclosure a record that "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. § 67.708(b)(1)(ii). To establish that this exemption applies, an agency must show: (1) a "reasonable likelihood" of (2) "substantial and demonstrable risk" to a person's security. *Del. Cnty. v. Schaefer*, 45 A.3d 1149 (Pa. Commw. Ct. 2012). Meanwhile, Section 708(b)(2) of the RTKL exempts from disclosure "[a] record maintained by an agency in connection with … law enforcement or other public safety activity that if disclosed would be reasonably likely to jeopardize or threaten public safety … or public protection activity." 65 P.S. § 67.708(b)(2). Similarly, Section 708(b)(3) of the RTKL exempts from public access "[a] record, the disclosure of which creates a reasonable likelihood of endangering the safety or the physical security of a building…." 65 P.S. § 67.708(b)(3).

"Reasonably likely" has been interpreted as "requiring more than speculation." *Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 375 (Pa. Commw. Ct. 2013); *see also California Borough v. Rothey*, 185 A.3d 456 (Pa. Commw. Ct. 2018) (holding that an agency must "offer more than speculation or conjecture to establish the security-related exceptions under the [RTKL]"); *but see Allegheny Cnty. Dist. Attorney's Off. v. Wereschagin*, 257 A.3d 1280, 1298 (Commw. Ct. June 21, 2021) ("The mere fact that the affidavits discuss a possibility of harm if the … [i]nformation is released does not make the affidavits speculative."); *Woods v. Off. of Open Records*, 998 A.2d 665, 670 (Pa. Commw. Ct. 2010) ("[T]he preponderance of evidence standard does not require

8

absolute certainty that if redacted portions were to be disclosed, there would be a breach of public safety…").

As a rule, the names and work schedules of public employees are generally public. *See, e.g.*, 65 P.S. § 67.708(b)(6)(ii); *Clain v. The Community College of Phila.*, OOR Dkt. AP 2022-0521, 2022 PA O.O.R.D. LEXIS 815. However, the OOR has previously found that disclosure of information that is otherwise plainly public in nature may enable threats to an employee where there is sufficient reason to believe that a threat exists and that the disclosure of the information would be likely to facilitate the threat. *See Spall v. Chester Cnty.*, OOR Dkt. AP 2023-1199, 2023 PA O.O.R.D. LEXIS 1373 (finding that the disclosure of electronic data related to employee locations would be reasonably likely to threaten personal and building security); *Oser v. Pocono Mountain Reg'l Police Dep't*, OOR Dkt. AP 2017-1419, 2017 PA O.O.R.D. LEXIS 1409 (finding that disclosure of certain information from daily activity sheets, *i.e.*, location and identity of an officer assigned to an assignment, patrol patterns, and number of officers assigned to a location, would threaten public safety).

Here, the Twigg Attestation provides:

9.  … [T]here is cause to believe that disclosure of the requested records would be reasonably likely to result in substantial and demonstrable risks of physical harm to or the personal security of individuals.
…
12. While the lobby reception area and certain other areas in [the CPOC's office building, [OPB], 1515 Arch Street] are open to the public, many areas of OPB are not generally open to unrestricted public access, and some areas are restricted access only.

13. To ensure building security and prevent unauthorized access, OPB building management recently implemented additional security measures including metal detectors.
…
16. Outside of any events which are announced as open to the general public, CPOC does not generally permit unrestricted public access to its office, and does not

9

> generally admit members of the public to CPOC office space without a prior appointment.
>
> …
>
> 19. … I was made aware of at least one recent attempt by the [R]equester to gain access to CPOC's office and/or staff without a prior appointment in a manner which raised building security concerns, whereby it was allegedly represented to the security staff that [R]equester was a courier and had a delivery to drop off for CPOC.
>
> 20. In light of the foregoing, and in light of a pattern of disruptive, concerning, and harassing or confrontational behavior directed towards multiple City departments by this [R]equester, the City has reason to believe that the disclosure of the requested records … would be reasonably likely to result in a substantial likelihood of risk to building [and] personal security ….
>
> 21. Specifically, disclosure of "photo IDs of each CPOC employee" and work schedules indicating when such individuals are in [the] office would be reasonably likely to result in a substantial likelihood of continued disruptive, concerning, or harassing behavior which is targeted or directed at particular individuals ….
>
> 22. Moreover, public disclosure of photo IDs used for employee badge identification and building access purposes would also create risks to personal and building security.

Pertinently, *In re: City of Philadelphia Police Department*, the Philadelphia Court of Common Pleas reversed the OOR and found that the disclosure of employee names and staffing numbers would be reasonably likely to threaten public safety. No. 22-01-001333 (Phila. Ct. Com Pl. Dec. 15, 2022). Subsequent to the OOR's Final Determination, the City had filed a petition for reconsideration,[9] supported by the Jacobs Attestation, which the Requester has introduced into instant record, and which provides the following:

---

[9] The OOR denied the petition for reconsideration, noting that it is unable to accept new evidence after the issuance of a final determination. *See, e.g., Pa. Dep't of Educ. v. Bagwell*, 131 A.3d 638 n.12 (Pa. Commw. Ct. 2016); *Pa. Dep't of Conserv. & Nat. Res. v. Vitali*, No. 1013 C.D. 2014, 2015 Pa. Commw. Unpub. LEXIS 479 (Pa. Commw. Ct. 2015) (noting that 1 Pa. Code 35.241 "does not contemplate the adjudicatory body accepting new evidence on reconsideration"). In any case, the OOR noted that, while the evidence submitted by the Department was disturbing, it concerned events that happened *after* the final determination had been issued, and an appellate court could review the matter *de novo*.

10

3. On multiple occasions … [the Requester] has attempted to gain entry to multiple [City Police Department; ("PPD")] offices and locations while armed with a long rifle.

4. On December 26, 2021, [the Requester] allegedly pointed a long rifle at the head of a security guard working at the front desk of PPD's headquarters, the Philadelphia Public Services Building, located at 400 North Broad Street in Philadelphia.

5. PPD's entire Right to Know Law Unit is located at PPD headquarters in the Philadelphia Public Services Building.

6. On December 28, 2021, [the Requester] was arrested by PPD pursuant to [multiple charges].

7. As [the Requester] allegedly threatened the life of a security guard at the front desk of the building where PPD's RTK Unit is located, by pointing a long rifle in her face, it is reasonably likely that providing [the Requester] with the names of the individual PPD officers in PPD's RTK Unit would threaten the lives of these individual PPD officers.

    a. [The Requester], on multiple occasions, has disagreed with the determinations made by the individual PPD officers in PPD's RTK Unit.

    b. It is reasonably likely that [the Requester] was attempting to gain entry to PPD's headquarters, where PPD's RTK Unit is located, to confront and/or threaten individual officers in PPD's RTK Unit with a long rifle.

8. It would be a public safety threat if individual PPD officers from PPD's RTK Unit were targeted and killed as these assassinated officers would no longer be able to protect the public.

9. Therefore, it would be a grave public safety threat as well as a grave safety threat to the personal security of [the] individual[s] … to reveal the[ir] identities….

The OOR generally cannot consider the identity of a requester. *See Advancement Project v. Pa. Dep't of Transp.*, 60 A.3d 891 (Pa. Commw. Ct. 2013); *Padgett v. Pa. State Police*, 73 A.3d 644, 647 (Pa. Commw. Ct. 2013). However, in prior cases involving particularized concerns regarding a requester, judicial actions, such as prior convictions or active protective orders, have operated to bar certain individuals receiving particular information. *See City of Phila. v. Barosh,*

11

189 A.3d 31, *5 (Pa. Commw. Ct. 2018) (unpublished) (affirming "the trial court's consideration of [the requester's] identity as a convicted arsonist and the perceived purpose of his RTKL requests"); *Sheils v. Pa. Dep't of Educ.*, No. 967 C.D. 2024, 2015 Pa. Commw. Unpub. LEXIS 251 (Pa. Commw. Ct. 2015) (considering the requester's pattern of threatening and abusive statements directed towards agency employees in applying the personal security exemption); *Cristea v. Bristol Twp. Sch. Dist.*, OOR Dkt. AP 2022-1610, 2022 PA O.O.R.D. LEXIS 2137 (noting, that although there was no judicial process barring the requester from possessing the records, it was still salient to consider the identity of the requester in concluding that disclosure of information related to the swipe-card usage of a particular employee threatened personal safety).

Here, it is imperative to consider the Requester's conduct, as the Requester has demonstrated a pattern of harassing, disruptive and threatening behavior towards City Departments. Evidence plainly connects the disclosure of employee information with a very real likelihood of a threat to the security of the individual employees and the safety of OPB. As such, the CPOC has meet its burden of proving that the employee information responsive to Item 2 of the first Request is exempt from disclosure. *See* 65 P.S. § 67.708(a)(1).

## CONCLUSION

For the foregoing reasons, the Requester's appeal is **denied**, and the CPOC is not required to take any further action. This Final Determination is binding on all parties. Within thirty days of the mailing date of this Final Determination, any party may appeal to the Philadelphia County Court of Common Pleas. 65 P.S. § 67.1302(a). All parties must be served with notice of the appeal. The OOR also shall be served notice and have an opportunity to respond as per Section 1303 of the RTKL, 65 P.S. § 67.1303, but as the quasi-judicial tribunal that adjudicated this matter,

the OOR is not a proper party to any appeal and should not be named as a party.[10]  All documents or communications following the issuance of this Final Determination shall be sent to oor-postfd@pa.gov.  This Final Determination shall be placed on the website at: http://openrecords.pa.gov.

**FINAL DETERMINATION ISSUED AND MAILED:  April 23, 2024**

*/s/ Blake Eilers*
Blake Eilers, Esq.
Appeals Officer

Delivered via E-File Portal to: James Glover, Shea Skinner, Esq. and Feige Grundman, Esq.

---

[10] *Padgett v. Pa. State Police*, 73 A.3d 644, 648 n.5 (Pa. Commw. Ct. 2013).

13